1  George Frost (Cal. Bar No. 178528)
   LAW OFFICES OF GEORGE FROST
2  2930 Magnolia Street
   Berkeley, CA 94705
3  Telephone: (510) 647-8863
   Facsimile: (510) 295-2562
4  Email: geofrost@comcast.net

5

6  Attorney for Plaintiffs
   Daniel Meier and Hazelle Fortich

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                      OAKLAND DIVISION  C11-06609  EDL

11

12  DANIEL MEIER, an individual; HAZELLE          CASE NO.:
    FORTICH, an individual; the MEIER
13  FORTICH FAMILY TRUST UDT, a living            COMPLAINT FOR BREACH OF
    trust,                                        FIDUCIARY DUTY, FRAUD, NEGLIGENT
14                                                MISREPRESENTATION, VIOLATIONS OF
              Plaintiffs,                         CAL. BUS. & PROF. CODE SECTION
15                                                17200, CONSTRUCTIVE TRUST,
         v.                                       VIOLATIONS OF SECTION 17(A) OF
16                                                SECURITIES ACT OF 1933 AND SECTION
    MICHAEL W. BOZORA, an individual;             10(B) OF THE SECURITIES EXCHANGE
17  TRUE NORTH FINANCING                          ACT OF 1934 AND RULE 10b-5
    CORPORATION, f/k/a CS FINANCING               THEREUNDER, SECURITIES FRAUD
18  CORPORATION, a Delaware corporation;          UNDER CALIFORNIA CORP. CODE
    CAPITAL SOLUTIONS MONTHLY                     SECTION 25401 et seq., BREACH OF
19  INCOME FUND, LP, f/k/a HENNESSEY              CONTRACT, AND BREACH OF
    FINANCIAL MONTHLY INCOME FUND,                COVENANT OF GOOD FAITH AND FAIR
20  LP, a Delaware limited partnership; CAPITAL   DEALING
    SOLUTIONS, LLC, a Delaware limited
21  liability company; CAPITAL SOLUTIONS          JURY DEMAND
    MANAGEMENT, LP, a Delaware limited
22  partnership; TED AMMIRO, an individual;
    AMMIRO MORTGAGE, INC., a corporation,
23  and DOES 1-50, inclusive,

24              Defendants.

25

26      Daniel Meier and Hazelle Fortich ("Daniel and Hazelle," the "family") and the Meier

27  Fortich Family Trust UDT ("Meier Trust") (collectively, "Plaintiffs") allege for their Complaint as

28  follows:

Law Offices of
George Frost
2930 Magnolia Street                                    -1-
Berkeley, CA 94705                                   Complaint
(510) 647-8863

## NATURE OF CASE

1.      This complaint aims to redress a betrayal of trust perpetrated against two married school teachers, Daniel and Hazelle, by their family financial advisor and the investment professionals who aided him.

## PARTIES, JURISDICTION AND VENUE

2.      Plaintiffs are a married couple living in Berkeley, California.  They are beneficiaries of a family trust, the Meier Fortich Family Trust UDT dated March 28, 2007, which is also a plaintiff in this case.

3.      Plaintiffs are informed and believe and therefore allege that Defendant True North Finance Corporation, f/k/a CS Corporation ("True North") is a Delaware corporation with its principal place of business at 21 Tamal Vista Blvd., Suite 230 Corte Madera CA 94925.

4.      Plaintiffs are informed and believe and therefore allege that Defendant Capital Solutions Monthly Income Fund, LP, f/k/a Hennessey Financial Monthly Income Fund, LP ("CSMIF") is a Delaware limited partnership with its principal place of business at 21 Tamal Vista Blvd., Suite 230 Corte Madera CA 94925.

5.      Plaintiffs are informed and believe and therefore allege that Defendant Capital Solutions Distributors, LLC ("CSD") is a Delaware limited liability company with its principal place of business at 21 Tamal Vista Blvd., Suite 230 Corte Madera CA 94925.

6.      Plaintiffs are informed and believe and therefore allege that Defendant Capital Solutions Management, LP ("CSM") is a Delaware limited partnership with its principal place of business at 21 Tamal Vista Blvd., Suite 230 Corte Madera CA 94925.

7.      Plaintiffs are informed and believe and therefore allege that Defendant Michael W. Bozora ("Bozora") is an individual residing, or that at relevant times hereto resided, at 138 Madrona, Belvedere, California, and a resident of California.

Law Offices of
George Frost
2930 Magnolia Street
Berkeley, CA 94705
(510) 647-8883

8.      Plaintiffs are informed and believe and therefore allege that Defendant Ted Ammiro ("Ammiro") is an individual with a principle place of business at 332 Pine Street, Suite 307, San Francisco, California, and a resident of California; Defendant Ammiro Mortgage Inc. ("Ammiro Mortgage") does business at the same address.  During the relevant period of this litigation, Ammiro was a licensed, registered real estate and mortgage broker in the State of California.

9.      The true names and capacities, whether corporate, associate, individual, partnerships or otherwise of Defendant DOES 1 through 50 are unknown to Plaintiffs, who therefore sue said defendants by fictitious names.  Plaintiffs are informed and believe, and on that basis allege, that each DOE is legally responsible in some manner for the events and occurrences herein referred to and proximately caused injury and damages to Plaintiffs as herein alleged.  Plaintiffs will amend this complaint to name theses DOEs individually when their identities are ascertained.

10.     Plaintiffs are informed and believe, and based thereon allege that, at all relevant times, each of the defendants, including DOES 1 through 50, inclusive were acting as the agents or employees of other defendants, and the acts, omissions and other conduct alleged herein were done within the course and scope of that agency or employment relationship.

11.     Plaintiffs are informed and believe, and based thereon allege, that jurisdiction and venue are appropriate in this court because the agreements at issue in this dispute were formed within the County of Alameda, and the parties performed and were expected to perform a substantial part of their duties under these agreements in Alameda, the fraud took place here, as did the breaches of fiduciary duty.

### FACTUAL BACKGROUND

12.     The Plaintiffs have had a long and close relationship with Bozora, who served as Daniel's parents' financial advisor and broker from the early 1980s while Bozora was at Merrill Lynch in that firm's Menlo Park, California office.

Law Offices of
George Frost
2930 Magnolia Street
Berkeley, CA 94705
(510) 647-8683

-3-
Complaint

13.     Daniel and his three brothers have all had accounts at Merrill Lynch, and Daniel's parents have from time to time deposited money into these accounts.

14.     Over his long stint at Merrill Lynch, as well as after his departure therefrom, Bozora advised Daniel's parents on all of their financial matters and also advised Daniel and Hazelle, too.

15.     For example, Bozora advised Daniel and Hazelle to obtain life insurance and to set up a college fund for their daughter Kaili, and handled the transfer of their initial house purchase in August 1998 (wiring the full amount in cash from Daniel's parents' Merrill Lynch account since Daniel and Hazelle paid in cash, $434,000).

16.     Daniel and Hazelle regarded Bozora as a trusted financial advisor and family friend.

17.     In or around 2005, while he co-owned and controlled FINRA-registered CSD, Bozora approached Daniel and Hazelle and suggested that they invest in CSMIF, a fund which he touted as safe, liquid and highly profitable.

18.     At that time Bozora was well aware of the family's financial situation, and indeed, was particularly focused on the fact that they did not have cash or liquid assets to spare for any kind of investment.

19.     Bozora suggested that they obtain capital for the investment by refinancing the mortgage on their home.

20.     Bozora claimed that by refinancing their mortgage and taking out a larger, adjustable rate short-term loan, the family could replace a portion of their lost income (due to Hazelle's working half-time) and save money on taxes due through higher mortgage interest tax deductions.

21.     On yellow legal pad paper, Bozora drew diagrams and wrote down numbers showing Daniel and Hazelle that they could take out a larger mortgage on the house for $300,000 more than the $250,000 they owed at the time, invest it in with CSMIF and "arbitrage" the different rates to make extra money.

Law Offices of
George Frost
2930 Magnolia Street
Berkeley, CA 94705
(510) 847-8663

-4-
Complaint

22.     The promised rate of return on the investment was 12%.

23.     Bozora said that they could do a short-term loan for the amount of time of the investment and then could pay it off.

24.     The family explained to Bozora that a steady and reliable income stream was particularly important because the then-pregnant Hazelle would soon be working half time while caring for their child.

25.     Bozora claimed that the investment was completely "safe."

26.     He told the family that they could cash out when they wanted to, so they could pay off their new, short-term adjustable rate mortgage when it came due.

27.     In fact, it was not true that their investment was "safe."

28.     In fact, it was not true that the family could cash out whenever they wanted to do so.

29.     In fact, the claim that Daniel and Hazelle would secure a tax-free stream of income was not true, because they would indeed pay tax on the interest income they received.

30.     Daniel and Hazelle relied upon Bozora's false statements in deciding to go ahead with the refinance and investment plan.

31.     Bozora introduced Daniel and Hazelle to his friend, Ammiro, a mortgage broker.

32.     Ammiro did not disclose that he had any relationship whatsoever to CSMIF.

33.     Ammiro assisted them in obtaining a new $550,000 loan secured by a deed of trust on their home.

34.     The new mortgage replaced a prior loan of approximately $250,000, with sufficient "take out" funds to invest $300,000 in CSMIF.

35.     The family's investment was effectuated by a check in the amount of $300,000 made out to CSMIF dated August 15, 2005.

36.     The new mortgage loan secured by their house would come due in August 2010.

Law Offices of
George Frost
2930 Magnolia Street
Berkeley, CA 94705
(510) 647-8883

-5-
Complaint

37.     Plaintiffs are informed and believe and therefore allege that CSD acted as the broker-dealer distributing CSMIF and received a substantial commission.  Plaintiffs are also informed and believe and therefore allege that CSM acted as CSMIF's investment advisor.

38.     Neither Daniel nor Hazelle recall being provided a prospectus in connection with their original $300,000 investment.

39.     Daniel and Hazelle believe they did not review a prospectus or other disclosure prior to making their initial investment in CSMIF.

40.     Neither Daniel nor Hazelle recall being asked to provide any information whatsoever regarding their assets, investment experience or sophistication.

41.     Their paramount goal in making this investment was a safe and liquid investment, and they would absolutely need the entire principal returned, with interest, before their new five-year adjustable rate mortgage loan was due in August 2010.

42.     Although Bozora represented to Daniel and Hazelle that their investment was safe, liquid, and diversified, it was none of those things.  According to information coming to light through the SEC action, the assets of CSMIF were loaned to a single Minnesota borrower, Hennessey Financial, LLC and/or Hennessey Financial Note Holdings LLC (collectively, "Hennessey Financial"), in the form of mezzanine real estate loans.  A mezzanine real estate loan is a loan in which the lender's security interest in the real estate collateralizing the loan is subordinate to a more senior lender.

43.     Neither Hennessey Financial nor CSMIF had the assets or cash flow to service the senior secured loans if CSMIF had to foreclose on its junior deeds of trust.

44.     Nor was there any market or other ability for Daniel and Hazelle to liquidate their investment rapidly, because their investment was in an unregistered hedge fund blind investment pool.

Complaint

Law Offices of
George Frost
2900 Magnolia Street
Berkeley, CA 94705
(510) 647-8553

45.     Bozora also knew that the expected monthly return on their investment was necessary for Daniel and Hazelle to pay for the larger mortgage loan they took out on their home to make the investment, and for their increased expenses and lower income during Hazelle's pregnancy and childrearing.

46.     At the time of their initial investment, Daniel and Hazelle were not aware that Bozora was affiliated with Hennessey Financial, and was in fact the manager of the real estate investment firm receiving the lions' share of the CSMIF investment funds.

47.     They viewed Bozora as a trusted family friend and, more than simply a placement agent, also as their financial advisor.

48.     After their monthly interest payments had stopped in October 2009, in their subsequent discussions and conversations with Bozora, he stressed that he was in "daily contact" with the company they had invested in, but he pretended that he were simply a third-party co-investor in that company.

49.     As Bozora knew, the investment in a risky, undiversified, illiquid blind pool hedge fund like CSMIF was completely unsuitable for Daniel and Hazelle, and this unsuitability was increased by Bozora's recommendation that they borrow 100% of the money to invest, and the assistance he provided to help them borrow those funds in a loan secured by their principal asset, their house.

50.     In addition to being a completely unsuitable investment for them, including Daniel and Hazelle as investors violated the securities laws, because they were neither accredited investors nor qualified purchasers with at least $5 million in net liquid assets.

51.     Daniel and Hazelle have not been able to locate any signed documents relating to the original investment.

52.     They do not know for certain if they signed a FINRA arbitration agreement, but

Law Offices of
George Frost
2800 Magnolia Street
Berkeley, CA 94705
(510) 647-8863

Complaint

1    believe they did not.

2        53.    It is their practice to keep a copy of important financial documents, but Daniel and
3    Hazelle do not have a copy of any of any original documents in connection with their initial
4    investment.

5        54.    Including Daniel and Hazelle as investors eliminated any exemption from
6
7    registration under Section 3(c)(1) or 3(c)(7) of the Investment Company Act for CSMIF.

8        55.    In 2007, Hennessey Financial, CSMIF's sole borrower, began having severe
9    financial difficulties, as its affiliated borrowers defaulted.

10       56.    In 2008, Hennessey Financial defaulted on its obligations to CSMIF, and CSMIF
11   foreclosed on its assets.  By then, CSMIF was in full collapse - it had no meaningful income-
12   producing investments, and it was forced to start paying existing investors out of proceeds raised
13
14   from new investors.

15       57.    Daniel and Hazelle knew nothing of these financial difficulties as they occurred,
16   because Bozora failed to disclose them.

17       58.    Rather, Bozora repeatedly made oral and written misrepresentations to Daniel and
18   Hazelle that, after the merger with True North, CSMIF was presented with "extraordinary
19   opportunity" with the credit crunch to make loans in underserved markets.  What an opportunity!

20       59.    Those misrepresentations were knowingly false and misleading.

21
22       60.    As noted in the SEC Complaint, True North was at that time insolvent, with its only
23   two loans in default and non-performing, and with CSMIF's sole borrower in default and its
24   foreclosed collateral subject to senior secured loans in default, which CSMIF had no ability to
25   service.

26       61.    On the basis of oral misrepresentations, false and misleading information, and
27   material omissions in failing to disclose material adverse information, Bozora persuaded Daniel and
28

Law Offices of
George Frost
2950 Magnolia Street
Berkeley, CA 94705
(510) 647-8863

-8-
Complaint

Hazelle not to withdraw their investment from CSMIF in 2009 but instead to roll that investment over into a "safer" investment in True North promissory notes in the summer of 2009.

62.     Daniel and Hazelle explained that they would need the money in full before the maturity date of the promissory notes in 2013, because they would most likely need to use the money to remodel their home to allow Hazelle's mother to live with them.

63.     Bozora stated that would be doable, because he would "talk to" True North about accommodating their needs.

64.     In fact, there was no possibility of withdrawing the money sooner than the maturity date, nor was there any possibility of recovering the principal at maturity, because the note investment was now at best a Ponzi scheme, with new cash investments in notes used to pay prior investor's interest.

65.     At that point, Daniel and Hazelle had received the monthly interest at 12% from their investment, so there was no reason to suspect anything was amiss.

66.     Daniel and Hazelle met with Bozora at his office in Corte Madera on June 8, 2009 to discuss the impending return of the $300,000 investment and their need to secure a new mortgage, to avoid a ratchet up in interest rates that would occur in August 2010.

67.     Also in attendance was Ammiro, whom Bozora brought in to handle the new mortgage financing.

68.     Bozora advised them their best course would be to flip the investment into the new series of True North promissory notes (the "Notes") -- at a rate of return of 10% -- because the notes would be safe and redeemable on short notice.

69.     Bozora told Daniel and Hazelle that since they were such close family friends, they would not even have to pay an additional 30% fee for the investment conversion to the Notes.

70.     The couple confided to Bozora and Ammiro their plan to build a second story on

Law Offices of
George Frost
2930 Magnolia Street
Berkeley, CA 94705
(510) 647-8883

-9-
Complaint

their house to accommodate a possible move-in by Hazelle's mother.

71.     Daniel had earlier faxed the estimate from an architect for the second story "mother unit" addition of $330,000 to $380,000.  At the meeting Bozora and Ammiro appeared to carefully review the architect's written estimate.  Bozora asked if Hazelle's mother could contribute to the remodel; Hazelle thought that maybe her mother could contribute at most $100,000, but stressed this was not likely for several reasons that she explained to the two men.

72.     During the meeting, Bozora drew diagrams on yellow legal paper to show how the new investment would be protected by certain pockets of money/assets, and promised that Daniel and Hazelle would be in the "premier level" or group to be paid back first if there were any financial difficulties.

73.     Ammiro conspired with Bozora to defraud the couple out of their investment and advocated they roll over their investment into the new Notes.

74.     Ammiro was well prepared for his part in the presentation.  He drafted a 3-page document that outlined four options for Daniel and Hazelle to consider: 1. Let loan go adjustable 2. Refinance to new 30-year loan with $550,000 principal 3. Increase loan from $550,000 to $629,000 for 30 year fixed 4. Refinance and pay down the loan balance from $550,000 to $250,000 (with the return of the initial $300,000 investment).

75.     Bozora urged them to pursue Option 3: Increase loan now from $550,000 to maximum conforming of $629,000 in anticipation of the new remodeling project and a need for capital to pay for the improvements.

76.     Bozora and Ammiro said that Daniel and Hazelle could do the remodel and also turn their initial investment into the Notes at 10%.

77.     With assurances from Bozora and Ammiro that the investment would be entirely safe, and that the particulars of the refinancing would work out and that the potential second-story

Law Offices of
George Frost
2950 Magnolia Street
Berkeley, CA 94705
(510) 647-8903

-10-
Complaint

addition would also be a possibility, Daniel and Hazelle decided to flip their initial investment of $300,000 into the new Series I notes.

78. Bozora gave Daniel and Hazelle a 1-page description of the "Series I Preferred Notes," and a 20-page pamphlet, "Series I Preferred Notes." They do not recall signing a written agreement to purchase the Notes.

79. Daniel and Hazelle were not provided a copy of the prospectus that was prepared in connection with the offering at the time of the Note purchase.

80. Daniel and Hazelle's original investment at a 12% rate was converted to the Notes paying 10% in June of 2009.

81. At this time, neither Bozora nor Ammiro disclosed their relationship to CSD or CSMIF. Daniel and Hazelle believed they were getting investment advice and mortgage loan assistance from fiduciaries.

82. Neither Bozora nor Ammiro disclosed that at the time of this transaction Bozora was founder and principal of True North, its former President, and was intimately familiar with the company's plunge into insolvency.

83. Neither Bozora nor Ammiro disclosed that at the time of this transaction Ammiro was a *director* of CSMIF, and also was paid as a consultant to drum up investments. Nor did they disclose that Ammiro's firm, Real Equity Solutions, had received approximately $2 million from CSMIF, and was in default.

84. In October of 2009, the monthly interest payment from the Notes was missing from Daniel and Hazelle's Wells Fargo checking account statement. Daniel contacted Bozora toward the end of October to find out if there was a bank transfer problem.

85. Bozora told Daniel that there were "liquidity issues" and that he anticipated the interest money to restart by January 2010 at the latest.

Law Offices of
George Frost
2930 Magnolia Street
Berkeley, CA 94705
(510) 647-8863

-11-
Complaint

86.     In November and December, Daniel contacted Bozora by email and was assured in a December 12, 2009 email that he was engaged in "ongoing discussions with the Fund Manager" and "that it appears it will be January before we see cash flow."

87.     Daniel and Hazelle continued to have faith in Bozora.  They trusted him because of his close relationship to Daniel's parents, for whom Bozora continued to act as their financial advisor, and had been appointed executor of Daniel and Hazelle's will.

88.     In January of 2010, the interest payments had still not restarted.  In the meantime, Daniel and Hazelle had to borrow money from Daniel's mother to pay for income tax and other expenses.  During this period, Bozora continued to portray himself as only an investor in True North, and not its founder and/or principal.

89.     At this time, Daniel also noticed discrepancies between their CSD statements and their Wells Fargo checking account statements.  The CSD statements totaled $25,819.66 and the Wells Fargo automatic deposits from CSD only totaled $20,761.74.  Daniel and Hazelle also received an inaccurate 1099 and K1; they asked Bozora via email to explain the discrepancies and to send a correct 1099 and K1.

90.     On February 13, 2010, Daniel emailed Bozora asking why he had not pursued remedial action against True North on their behalf.

91.     Bozora had explained to Daniel that he, too, was a Note creditor of True North and was trying to get his own investment back.

92.     Bozora replied in an email the same day: "The reason I am not, at this time, pursuing it for them or me, is that I want to see 1. If they are able to secure term financing, which they are pursuing…"

93.     At Bozora's suggestion, Daniel mailed a letter to Scott Carlson, True North's legal counsel at the time, asking for the return of their investment.  True North did not respond.

Law Offices of
George Frost
2930 Magnolia Street
Berkeley, CA 94705
(510) 647-8863

-12-
Complaint

94.     On March 6, 2010, Daniel and Hazelle sent Bozora an email letter asking, among other items, to send their 1099 and K1s, and asking him to send written proof that their investment money would restart, and noting that the "recent True North letter (February 2010) does not state that payments and/or repayment of initial CS investments will restart in June or at any other date."

95.     At Bozora's suggestion, on April 20, 2010 Daniel called Tim Redpath ("Redpath"), a former CEO of True North, and its current Vice President of Finance (and a longtime partner of Bozora's, including in CSD as well as CSM).

96.     Redpath told Daniel: 1) True North was hoping to restart bond offering in June 2010 to provide capital to the CSMIF, 2) Daniel and Hazelle could get full investment back when it's due in 2013, 3) $30 million of the Notes were out there, if cash in the bank, can't even contemplate getting our full investment back, 4) June 2009, new 4 year note, no liquidity, provision in that agreement, True North manager of CSMIF, friends and family can convert without extra 30% or 90,000, 5) plan, 30% of our investment back earlier and then the rest into True North stock, 6 months/1 year from now, a different conversation. 5) no $ to the Fund, T. Duckson, consider request to get our $ back, full investment; see "Offering Documentation", conversion form and questionnaire, provision general partner, make an exception to withdraw our capital.

97.     Daniel and Hazelle had never received this "Offering Documentation" from Bozora at the time of their Note purchase.

98.     Upon their request, Bozora later sent it to them via email as a pdf.

99.     On July 21, 2010, Daniel called Redpath for the second and last time.  Redpath said (per Daniel's notes) no $ to redeem people, 221 people in Trust now, more paid 30%, no capital now, 3 years to get investment back, 4 year trust all real estate sold in 4 years, asset sales $, 30% people back first.

100.     Bozora falsely, fraudulently, and repeatedly assured Daniel that interest payments

Law Offices of
George Frost
2930 Magnolia Street
Berkeley, CA 94705
(510) 647-8863

-13-
Complaint

would resume shortly—first that they would resume in late 2009, then later that they would resume in early 2010, then later they would resume by June 1, 2010.

101.    In fact, as Bozora knew, there was no possibility that interest payments would resume, because True North had essentially no income, and the assets held by True North were subject to senior secured loans that True North would have to service, despite the lack of income.

102.    Into summer 2010, Bozora explained to Daniel that there was "no point" in suing True North and that interest payments would resume soon and that Daniel should wait.

103.    In detrimental reliance on Bozora's fraudulent misrepresentations, Daniel and Hazelle did not sue, and incurred additional borrowing to meet monthly costs with the expectation that payments would shortly resume on the True North notes.

104.    It was only in 2011 that Daniel and Hazelle slowly grasped the truth – they had been conned out of hundreds of thousands of dollars by a close family friend, aided by another professional, who had arranged their large and unaffordable loan on their home.

## FIRST CAUSE OF ACTION
### (Breach of Fiduciary Duty Against Bozora, Ammiro and Ammiro Mortgage)

105.    Plaintiffs incorporate herein by reference the allegations contained in paragraphs 1 through 104 above.

106.    Bozora owed a fiduciary duty to Plaintiffs based on his status as their investment advisor.  Ammiro and his mortgage firm owed a fiduciary duty based on his status as a California registered real estate and mortgage broker.  "A person who provides brokerage services to a borrower in a covered loan transaction by soliciting lenders or otherwise negotiating a consumer loan secured by real property, is the fiduciary of the consumer, and any violation of the person's fiduciary duties is a violation of this law."

107.    Defendants each breached their fiduciary duties by failing to disclose their relationship to CSMIF, CSD, Hennessey Financial or True North, by failing to determine that the

Law Offices of
George Frost
2930 Magnolia Street
Berkeley, CA 94705
(510)  647-8863

-14-
Complaint

investment was appropriate for Plaintiffs, by misrepresenting and failing to disclose numerous material facts related to Plaintiffs' investment and Plaintiffs' ability to recoup their investment within a certain timeframe.

108.    As a direct and proximate result of defendant's wrongful conduct alleged herein, Plaintiffs have suffered damages in an exact amount to be proved at trial.

109.    Defenants's conduct was despicable, constitutes oppression, fraud and malice within the definition of California Civic Code § 3294, and was done with willful and conscious disregard for the rights of Plaintiffs.  By reason of such conduct, Plaintiffs are entitled to recover punitive damages from Bozora, Ammiro and Ammiro Mortgage.

## SECOND CAUSE OF ACTION
### (Fraud Against All Defendants)

110.    Plaintiffs incorporate herein by reference the allegations contained in paragraphs 1 through 109 above.

111.    Bozora, CSD, CSM, CSMIF and True North, acting individually, and as the agent of the other parties (the "corporate defendants"), made the following misrepresentations of material fact to Plaintiffs:  (1) the investment into CSMIF was completely safe and liquid, (2) Plaintiffs could cash out their investment into CSMIF at any time, (3) Plaintiffs would secure a tax-free stream of income, (4) after the merger with True North, CSMIF was presented with "extraordinary opportunity" with the credit crunch to make loans in underserved markets, (5) the Notes would be safe and redeemable on a short term basis, (6) Plaintiffs would be able to withdraw the money in full before the maturity date of the Notes in 2013, (7) Plaintiffs would stand first in line to be paid off on the Notes if True North experiences any financial difficulties, (8) Plaintiffs could earn a rate of return of 10% on the Notes, (9) interest payments on Plaintiffs investments, once stopped, would resume, and (10) Plaintiffs would earn a return of 12% on their initial investment into CSMIF. Bozora also failed to disclose to Plaintiffs his relationship to CSMIF, CSD, Hennessey Financial or

Law Offices of
George Frost
2900 Magnolia Street
Berkeley, CA 94705
(510) 847-8903

-15-
Complaint

True North, as well as any of the facts related to financial difficulties experienced by either CSMIF

or True North during the period between 2007 and 2010.

112.    Ammiro, for himself and on behalf of his brokerage business, made the following

misrepresentations of material fact to Plaintiffs: (1) Plaintiffs could do a remodel of their house and

turn a 10% return on their investment in the Notes, and (2) that the investment into the Notes would

be safe, and the terms of the refinancing would be worked out to Plaintiffs advantage.  Ammiro also

failed to disclose his involvement with True North or CSMIF.  Finally, Ammiro conspired with

Bozora to defraud Plaintiffs out of their investment.

113.    Bozora, Ammiro and CSD made these false statements while aware of their falsity,

with the intention of inducing Plaintiffs' reliance thereon.  Bozora, Ammiro and CSD failed to

disclose material facts to Plaintiffs with the intention of inducing Plaintiffs' reliance thereon.

114.    These false statements and failures to disclose each induced reliance on the part of

Daniel and Hazelle, who would have acted differently with respect to each fraud.

115.    As a direct and proximate result of the wrongful conduct alleged herein, Plaintiffs

have suffered damages in an amount to be determined at trial.

116.    Bozora and Ammiro's conduct was despicable, constitutes oppression, fraud and

malice within the definition of California Civil Code § 3294, and was done with willful and

conscious disregard for the rights of Plaintiffs.  By reason of such conduct, Plaintiffs are entitled to

recover punitive damages from Bozora, Ammiro and the corporate defendants.

## THIRD CAUSE OF ACTION
### (Negligent Misrepresentation Against All Defendants)

117.    Plaintiffs incorporate herein by reference the allegations contained in paragraphs 1

through 116 above.

118.    Bozora, CSD, CSM, CSMIF and True North, made the following misrepresentations

of material fact to Plaintiffs:  (1) the investment into CSMIF was completely safe and liquid, (2)

Law Offices of
George Frost
2930 Magnolia Street
Berkeley, CA 94705
(510) 647-8903

Complaint

Plaintiffs could cash out their investment into CSMIF at any time, (3) Plaintiffs would secure a tax-free stream of income, (4) after the merger with True North, CSMIF was presented with "extraordinary opportunity" with the credit crunch to make loans in underserved markets, (5) the Notes would be safe and redeemable on a short term basis, (6) Plaintiffs would be able to withdraw the money in full before the maturity date of the Notes in 2013, (7) Plaintiffs would stand first in line to be paid off on the Notes if True North experiences any financial difficulties, (8) Plaintiffs could earn a rate of return of 10% on the Notes, (9) interest payments on Plaintiffs investments, once stopped, would resume, and (10) Plaintiffs would earn a return of 12% on their initial investment into CSMIF. Bozora also failed to disclose to Plaintiffs his relationship to CSMIF, CSD, Hennessey Financial or True North, as well as any of the facts related to financial difficulties experienced by either CSMIF or True North during the period between 2007 and 2010.

119. Ammiro made the following misrepresentations of material fact to Plaintiffs: (1) Plaintiffs could do a remodel of their house and turn a 10% return on their investment in the Notes, and (2) that the investment into the Notes would be safe, and the terms of the refinancing would be worked out to Plaintiffs advantage. Ammiro also failed to disclose his involvement with True North or CSMIF. Finally, Ammiro conspired with Bozora to defraud Plaintiffs out of their investment.

120. Bozora, Ammiro and CSD made these false statements without any reasonable grounds for believing them to be true, and with the intention of inducing Plaintiffs' reliance thereon. Bozora, Ammiro and CSD failed to disclose material facts to Plaintiffs without any reasonable ground to believe them to be immaterial to Plaintiffs investment decision, and with the intention of inducing Plaintiffs' reliance thereon.

121. These false statements and failures to disclose each induced reliance on the part of Daniel and Hazelle, who would have acted differently with respect to each fraud.

Law Offices of
George Frost
2930 Magnolia Street
Berkeley, CA 94705
(510) 647-8863

-17-
Complaint

122. As a direct and proximate result of the wrongful conduct alleged herein, Plaintiffs have suffered damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION.
### (Cal. Bus. And Prof. Code Section 17200 et seq. Against All Defendants)

123. Plaintiffs incorporate herein by reference the allegations contained in paragraphs 1 through 122 above.

124. The Defendants' conduct alleged above constitutes unfair competition and unlawful and unfair business practices within the meaning of Cal. Bus. and Prof. Code Section 17200 et seq.

125. As a result of these violations the Defendants have been enriched and continue to be enriched at the expense of Plaintiffs.

126. To prevent unjust enrichment, the Defendants should be required to disgorge their illegal gains and make full restitution to Plaintiffs.

## FIFTH CAUSE OF ACTION.
### (Constructive Trust Against CSMIF, True North and Ammiro Mortgage)

127. Plaintiffs incorporate herein by reference the allegations contained in paragraphs 1 through 127 above.

128. By virtue of Defendants' misconduct, as alleged herein, CSMIF or True North hold the assets of Plaintiffs, or any and all proceeds from the sale of thereof, as a constructive trustee for the Plaintiffs' benefit.

## SIXTH CAUSE OF ACTION.
### (Violations Of Section 17(a) Of Securities Act Of 1933 And Section 10(b) Of The Securities Exchange Act Of 1934 And Rule 10b-5 Thereunder Against All Defendants)

129. Plaintiffs incorporate herein by reference the allegations contained in paragraphs 1 through 128 above.

130. Defendants, and each of them, by engaging in the conduct described above, directly or indirectly, in connection with the purchase or sale of a security, by the use of means or instrumentalities of interstate commerce, with scienter (1) employed devices, schemes, or artifices

Law Offices of
George Frost
2930 Magnolia Street
Berkeley, CA 94705
(510) 647-8863

-18-
Complaint

to defraud; (2) made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (3) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

131.     By engaging in the conduct described above, Defendants, and each of them, violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder.

132.     As a direct and proximate result of these violations, Plaintiffs have suffered damages in an amount to be determined at trial.

**SEVENTH CAUSE OF ACTION.**
**(Securities Fraud Under California Corporations Code Section 25401 Et Seq. Against All Defendants)**

133.     Plaintiffs incorporate herein by reference the allegations contained in paragraphs 1 through 132 above.

134.     Defendants, and each of them, by engaging in the conduct described above, directly or indirectly, have offered for sale, and sold, securities in the State of California by means of written and oral communications which include an untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

135.     By engaging in the conduct described above, Defendants, and each of them, violated, and unless restrained and enjoined will continue to violate, California Corporations Code Section 25401 et seq.

136.     As a direct and proximate result of these violations, Plaintiffs have suffered damages in an amount to be determined at trial.

Law Offices of
George Frost
2930 Magnolia Street
Berkeley, CA 94705
(510) 647-8863

## EIGHTH CAUSE OF ACTION.
### (Breach Of Contract Against Bozora)

137.    Plaintiffs incorporate herein by reference the allegations contained in paragraphs 1 through 136 above.

138.    Plaintiffs and Bozora entered into verbal contracts for the provision of financial and investment advice by Bozora to Plaintiffs, and for the specific investments at issue herein.  Implied into the contract was a covenant on Bozora's part that the services would be provided to Plaintiffs competently and professionally, and that the investments would pay off as promised.

139.    Plaintiffs have fulfilled all of their obligations to Bozora pursuant to their verbal agreement, or such obligations have been excused due to Bozora's conduct.

140.    By engaging in the conduct outlined above, Bozora had failed to provide competent financial and investment advice, as required by the terms of the verbal agreement with Plaintiffs.

141.    As a direct and proximate result of Bozora's breach of contract, Plaintiffs have suffered damages in an amount to be determined at trial.

## NINTH CAUSE OF ACTION.
### (Breach Of Covenant Of Good Faith And Fair Dealing Against Bozora)

142.    Plaintiffs incorporate herein by reference the allegations contained in paragraphs 1 through 141 above.

143.    All contracts, including the verbal agreement between Plaintiffs and Bozora, have an implied covenant of good faith and fair dealing.

144.    Bozora breach of the covenant of good faith and fair dealing includes (i) failing to provide competent financial advice and investment advice, as required by the verbal agreement, (ii) making various misrepresentations regarding the nature of the investments he was suggesting to Plaintiffs, and (iii) failing to disclose his relationship with the entities which he was proposing for investment purposes to Plaintiffs.

145.    As a direct and proximate result of said breach, Plaintiffs have suffered damages in

Law Offices of
George Frost
2930 Magnolia Street
Berkeley, CA 94705
(510) 647-8663

-20-

Complaint

1  an amount to be determined at trial.

2                                    **PRAYER**

3        WHEREFORE, prays for judgment against the defendants and each of them as follows:

4        A.       For compensatory damages in an amount to be proven at trial;

5        B.       For prejudgment interest at the rate allowed by law;

6

7        C.       For costs of suit including attorney's fees incurred herein;

8        D.       For punitive damages to deter any future fraudulent behavior on the part of the

9  Defendants;

10       K.       For such other and further relief as the Court may deem just and proper.

11

12  DATED  December 15, 2011

13                                       _____

14                                       GEORGE FROST, ESQ.
                                         Attorney for Plaintiffs Daniel Meier, Hazelle Fortich
15                                       and the Meier Fortich Family Trust

16

17

18

19

20

21

22

23

24

25

26

27

28

George Frost
2930 Magnolia Street
Berkeley, CA 94705
(510) 647-8863

                                         -21-
                                       Complaint

**JURY DEMAND**

Plaintiff demands a trial for jury on all causes of action so triable.

DATED: December 15, 2011

_G. Frost_

GEORGE FROST, ESQ.
Attorney for Plaintiffs Daniel Meier, Hazelle Fortich
and the Meier Fortich Family Trust

Law Offices of
George Frost
2930 Magnolia Street
Berkeley, CA 94705
(510) 647-8883

-22-
Complaint